UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| RICHARD A. O'DONNELL,<br><br>Plaintiff,<br><br>v.<br><br>GRAND CASINO MILLE LACS,<br>MARGE ANDERSON, HAROLD... 'DOE'<br>(Security Guard), ARRON MONROE,<br>RONALD JOHNSON, 'JOHN DOES'<br>INVOLVED [IN] INCIDENT, and<br>MILLE BAND OF OJIBWE,<br><br>Defendants. | Civil No. 10-3875 (RHK/LIB)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the undersigned United States Magistrate Judge on Plaintiff's application for leave to proceed in forma pauperis, ("IFP"), pursuant to 28 U.S.C. § 1915(a). (Docket No. 2.) The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Plaintiff's IFP application be denied, and that this action be summarily dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I. BACKGROUND**

Plaintiff is a resident of the State of Washington who is attempting to bring a common law tort claim against several Defendants. All of the Defendants allegedly reside in Minnesota, so federal subject matter jurisdiction purportedly exists under the diversity of citizenship statute – 28 U.S.C. § 1332.

Plaintiff's claims against Defendants are based on a series of events that allegedly occurred at the Grand Casino Hotel Mille Lacs, ("the Hotel"), which is located in Mille Lacs

County, Minnesota. Plaintiff alleges that he checked into the Hotel on September 7, 2009. A bed bug allegedly bit him at about 4:00 a.m. the following morning, while he was sleeping, and he then decided to leave the Hotel immediately. (Complaint, [Docket No. 1], p. 4, ¶ 7.) When Plaintiff checked out of the Hotel, he mentioned the bed bug incident to a Hotel employee. (Id.) Later that day, September 8, 2009, Plaintiff decided to return to the Hotel. (Id., ¶ 8.) When Plaintiff checked into the Hotel again, he mentioned the bed bug incident, and asked for a different room. (Id., ¶ 9.)

After Plaintiff was settled in his new room, he went to an adjoining casino area. While Plaintiff was in the casino, he heard a page asking him to come to the front desk to receive a visitor. Although Plaintiff was not expecting any visitor, he nevertheless went to the front desk. When he arrived there, he was met by a Hotel security guard identified in the Complaint as Defendant "Harold... Doe," (hereafter "Doe"). Plaintiff was told to wait while Doe called the Hotel security office. When Plaintiff asked what was going on, Doe said he did not know. When Plaintiff attempted to leave the area to "cash in his pay ticket," (presumably meaning his gambling winnings), Doe allegedly put his hand on Plaintiff's shoulder and told him that he had to stay. (Id., ¶s 9-11.)

A few minutes later, Defendants Arron Monroe and Ronald Johnson appeared, and escorted Plaintiff to another room. Defendants Monroe and Johnson then questioned Plaintiff for about fifteen minutes about the bed bug incident. (Id., ¶ 12.) Plaintiff alleges that he was "bombarded about his intentions," and he responded that he "had no intentions," but "was just trying to be helpful in a discreet manner to the Hotel." (Id.) Plaintiff was then informed that the room with the bed bug "had been sealed off and was being deloused." (Id.) Defendants Monroe and Johnson also "asked to take a photograph

2

of the bite mark on Plaintiff' O'Donnell's ankle and further asked Plaintiff O'Donnell to 'make a written statement.'" (Id.)

The Complaint does not describe anything else that happened to Plaintiff while he was still at the Hotel. However, Plaintiff alleges that during the next twelve months, he "received no less than twenty invitations to stay at the Grand Casino Mille Lacs and participate in its gaming casino." (Id., ¶ 13.)

Based on the foregoing allegations, Plaintiff is now attempting to sue Defendants Doe, Monroe, Johnson and "Grand Casino Mille Lacs." He is also attempting to sue several other parties who are never even mentioned in the substantive allegations of his complaint – namely, Marge Anderson, "'John Does' Involved [In] Incident," and "Mille Lacs Band of Ojibwe."

Plaintiff is attempting to sue Defendants for "intentional infliction of emotional distress" – a common law tort established by Minnesota state case law. Hubbard v. United Press International, Inc., 330 N.W.2d 428 (Minn.1983). Plaintiff's Complaint alludes to "unprecedented and unwarranted harassment, mental pain and suffering, severe anxieties," and "humiliation and embarrassment," (id., ¶ 14), but he has not described any specific injury or harm caused by Defendants, nor has he described any specific treatment that he has received for any such injury or harm.

Plaintiff has described the relief he is seeking in this case as follows:

> "I wish of the court, after due process of O'Donnell's complaint, to have a jury trial, asking the jury to award Plaintiff O'Donnell the sum of $225,000.00 in general damages, and to award O'Donnell Three (3) times general damages, plus punitive damages as determined by a jury."

(Complaint, p. 4, "Request for Relief.")

## II. DISCUSSION

An IFP application will be denied, and the action will be dismissed, when the plaintiff has filed a complaint that fails to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).

To state an actionable claim for relief, a complaint must allege a set of specific historical facts, which, if proven true, would entitle the complainant to some legal recourse against the named defendants, based on some cognizable legal theory. Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (emphasis added).

In this case, Plaintiff is attempting to sue Defendants for intentional infliction of emotional distress – a Minnesota common law tort. The Minnesota Supreme Court has identified the elements of this tort as follows:

> "Intentional infliction of emotional distress consists of four distinct elements: '(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'"

Langeslag v. KYMN Inc., 664 N.W.2d 860, 864 (Minn. 2003), quoting Hubbard, 330 N.W.2d at 438-39. "To prevent fictitious and speculative claims," the Minnesota Supreme Court has "limit[ed] this tort 'to cases involving particularly egregious facts.'" Langeslag, 664 N.W.2d at 866, quoting Hubbard, 330 N.W.2d at 439 (emphasis added).

The first of the four elements of intentional infliction of emotional distress is often the most critical. The Minnesota Supreme Court has held that –

> "Conduct is 'extreme and outrageous' when it is 'so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized

4

> community.'... Liability for intentional infliction of emotional distress does not extend to 'insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'... To qualify as extreme and outrageous, the conduct must lead an average member of the community to exclaim 'Outrageous!'"

Langeslag, 664 N.W.2d at 865 (citations omitted).

The Minnesota Supreme Court has frequently reiterated that "intentional infliction of emotional distress is 'sharply limited to cases involving particularly egregious facts' and that a 'high threshold standard of proof' is required." Id. at 864, quoting Hubbard, 330 N.W.2d at 439.

Here, Plaintiff has failed to plead an actionable claim for intentional infliction of emotional distress, because the facts on which his claim is based do not support the first element of that tort. No reasonable factfinder could conclude, based on the facts presented by Plaintiff, that any of the Defendants acted in a manner that was "so atrocious" that it surpassed "the boundaries of decency." Id. at 865. Perhaps Plaintiff has some unusual sensitivity that caused him to be upset by something that Defendants did, but he has not alleged anything in his Complaint that is "utterly intolerable to the civilized community." Id.

Defendants Monroe and Johnson may have treated Plaintiff in a manner that he felt was offensive or annoying, but Plaintiff has not described anything done by those Defendants, (or any other Defendants), that could be considered <u>extremely</u> or <u>egregiously</u> outrageous. Given the stringent standards that apply to the tort of intentional infliction of emotional distress, it is clear that no reasonable factfinder could sustain such a claim based on the facts alleged in Plaintiff's Complaint.

In sum, even if all of the allegations in Plaintiff's Complaint are viewed in a light most favorable to his claim, he still has not alleged a set of facts that could satisfy the first

element of a claim of intentional infliction of emotional distress. Even if all of the facts alleged in Plaintiff's Complaint are completely true, those facts would not warrant a judgment in Plaintiff's favor. Thus, the Court finds that Plaintiff's Complaint fails to state a cause of action on which relief can be granted. Because Plaintiff has failed to plead an actionable claim for relief, the Court will recommend that his IFP application be denied, and that this action be summarily dismissed, pursuant to § 1915(e)(2)(B)(ii).

## III. RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED**; and

2. This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Dated: September 22, 2010

s/ 
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by October 6, 2010**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.